Breitel, J.
In this youthful offender proceeding arising out of a three-count indictment for robbery, larceny and assault, defendant appeals by permission. The Appellate Division unanimously affirmed, without opinion, a judgment of the Supreme Court, Queens County, declaring defendant a youthful offender and committing him for an indefinite term to the Reception Center at Elmira, pursuant to article 3-A of the Correction Law.
*161 Two issues are presented. First, whether the trial court should have ruled upon the voluntariness of defendant’s admissions introduced at the trial. Second, whether the trial court erred in adjudicating defendant a youthful offender without expressly setting forth the particular acts, otherwise criminal, which were the basis for its determination. It is concluded that the record is deficient in both respects, and that the case should be remanded for further findings.
On April 1,1965 a three-count indictment was returned against defendant. The indictment charged defendant with robbery, second degree, grand larceny, first degree, and assault, second degree, in connection with an alleged robbery from one Andrew Spears on February 26, 1965. Defendant was only 16 years of age when the crime was committed, and the District Attorney moved to have defendant treated under the youthful offender provisions of the Code of Criminal Procedure (§§ 913-e-913-r). The motion was granted and, on July 28, 1965, the District Attorney filed a three-count youthful offender information tracking the superseded indictment.
At the trial, Andrew Spears testified that on the evening of February 26,1965 defendant, in the company of another person, stopped him on the street and demanded his money. Before Spears could comply, defendant struck him on the jaw, knocking him out. When Spears recovered full consciousness, he discovered that $12 were missing from his possession. Because of his dizziness, however, he could not recall whether anyone had reached into his trouser pocket. Shortly, upon recovering his senses, Spears called the police. Spears also said that he had seen defendant in the neighborhood on prior occasions.
Patrolman Burkitt, one of the officers who answered Spears’ call, also testified at the trial. On the basis of a description supplied by Spears, Burkitt apprehended defendant. The arrest came after a brief chase on foot through back yards. After overtaking defendant, Burkitt asked him why he had u wanted to hit an old man like that.” Defendant replied, “I hit him but I didn’t mean to hurt him.” A search of defendant uncovered only $2. When questioned about the other $10, defendant stated that he had given them to the “ other fellow.”
Defendant took the stand in his own behalf. He testified that, on the evening in question, Spears had struck him after defend *162 ant had refused to repay money he had borrowed from Spears. In self-defense, defendant pushed Spears so that he fell off a stoop. Defendant testified that this was the same account which he had given the patrolman at the time of arrest; he denied having told the officer that he had given $10 to a companion. Finally, he testified that, after being beaten at the police station house, he had told a detective: “ I hit him but I didn’t mean to hurt him.”
After both sides had rested, defendant’s counsel moved for acquittal on the ground of failure of proof. In addition, he moved, in accordance with a prior request for a pretrial confession hearing,* that “ any admissions or confessions be deemed to be involuntarily made by the defendant.”
The trial court denied the motion:
“I heard no admissions so far as this kid goes, except a possible admission when he said, ‘ I hit him, ’ in the station house. I have no evidence of any force or violence or threats that were made that caused him to say it in the station house.
‘ ‘ I believe the young policeman, who testified that this fellow told him that he hit him after the policeman grabbed him, after he chased him. He said, ‘ What did you want to hit an old man like that for? ’, and he said, ‘ I hit him but I didn’t mean to hurt him. ’ I believe the policeman on that.
“ Your motion is denied and I don’t believe a word this kid said.
‘ ‘ The defendant is guilty as a youthful offender. ’ ’
It is evident, upon analysis, that the trial court’s findings were wanting in two respects. First, there is no explicit finding that defendant’s statements to the patrolman, which furnished significant proof of the crime, were voluntarily made. Instead, there are the assertions that the officer is believed and the defendant disbelieved, but it is not at all clear that the court was referring to whether defendant made the admission or whether, if made, it was voluntarily made. The court, with some ambiguity or even self-contradiction, merely found that the admission *163 had been made to the patrolman at the scene rather than to a detective in the station house. Thus, the admission in issue was that made .on the street, but the court refers only to the interview at the station house with the detective, an entirely different matter. Moreover, the court refers only to force or violence or threats—which is not all that is involved, especially with respect to a 16-year-old youth—and then only to negative such factors at the station house, without reference- to the street scene, the situs of the admission in issue.
Under the rationale if not the precise holding of Jackson v. Denno (378 U. S. 368), the trial court in a nonjury case must make a specific finding that a confession or admission is voluntary beyond a reasonable doubt (People v. Williams, 25 A D 2d 612; cf. People v. Sayers, 26 A D 2d 736, 737). While a completely separate hearing on voluntariness may perhaps not be required in nonjury cases (cf. Code Crim. Pro., § 813-d, subd. 3), and that precise issue is not tendered on the present appeal, express findings are certainly needed in order to assure that the trial or hearing court has determined the issue of voluntariness without consideration of the other evidence tending to establish guilt (cf. Jackson v. Denno, 378 U. S. 368, 379, 383, 387, supra). The confusing statements in this case do not supply the necessary findings and the very disagreement in this court shows that the statements are inadequate if they are usable to support such contrary conclusions. tZ
In the instant case, defendant’s counsel, as noted, requested a ruling on the voluntariness of the admissions. Moreover, the issue of voluntariness, without evidence of force or threat, is suggested in the case of admissions by a 16-year-old boy in response to pointed questions by a police officer immediately following°hot pursuit and arrest (see Haley v. Ohio, 332 U. S. 596; Matter of Gregory W., 19 N Y 2d 55). It may be significant, too, that defendant was not warned of his rights before he made the admissions (cf. Miranda v. Arizona, 384 U. S. 436, decided after the arrest in this case; Johnson v. New Jersey, 384 U. S. 719).
The findings of the trial court are also wanting in a second respect: failure to specify the acts, otherwise criminal, supporting the determination that defendant is a youthful offender. It is well settled that adjudication as a youthful offender must *164 rest upon a finding that the defendant committed the criminal acts charged against him in the indictment or information (Code Crim. Pro., § 913-j; People v. Corsetti, 10 A D 2d 685; People v. Shannon, 1 A D 2d 226, 227, affd. 2 N Y 2d 792). The statute reads: “ If the defendant enters a plea of guilty to the charge of being a youthful offender or if, after trial, the court shall find that he committed the acts charged against him in the indictment or information, the court shall adjudge the defendant to be a youthful offender and the indictment or information shall be considered a nullity and of no force or effect.” No doubt the statute may be read to require only a subjective unexpressed finding by the trial court but, if that is the sole office of the statute, it serves little purpose.
Nevertheless, the statute is not here read nor should it be read to require formal findings as the law contemplates in other matters. The statute is satisfied if it appears that the court is expressing a finding on identifiable material culpable acts. Where there is only one such act, as, e. g., an assault, or simple larceny, any adjudication of guilt suffices. But, where, as here, there are several charges, with different elements, and there may be sufficient or satisfactory evidence as to some and not as to others, the court, however informally, should express the culpable acts upon which it is basing its adjudication.
In this case, the three-count youthful offender information recited three distinct acts, which were otherwise criminal: a robbery, a grand larceny and an assault. Nevertheless, the trial court merely found that defendant was ‘ ‘ guilty as a youthful offender ”, without specifying the underlying act or acts. In such circumstances, the lack of specific findings unfairly infringes upon defendant’s right to appeal by making difficult or impossible attacks on the evidentiary or legal bases for the particular charges (Matter of Gault, 387 U. S. 1, 58; see Kent v. United States, 383 U. S. 541, 561 [transfer proceedings]; cf. People v. Lombardi, 18 A D 2d 177, 180, affd. 13 N Y 2d 1014 [findings at suppression hearings]; People v. Standish, 5 A D 2d 726 [ambiguous jury verdict]). Moreover, the more specific findings, when necessary, may influence the treatment of the defendant by the custodial or probation authorities. In the unfortunate circumstance of future prosecutions, the findings, not available in the prosecutions but available to the probation *165 and correctional authorities, may be of significance. Lastly, the making of more specific findings in a many-faceted case, as distinguished from one of simple unitary structure, functions as an effective and self-disciplinary control on the judicial process itself.
Analogies to general verdicts by juries are either not appropriate or, on the other hand, support the conclusion reached here. Juries are required to return verdicts as to each of the counts submitted to them (Code Crim. Pro., § 443-a). The requirements spelled out in the present discourse require no more.
On this view, the judgment of conviction should be reversed and the case remanded for further findings on the issues .of voluntariness and the underlying acts supporting the determination. Whether further or de novo hearings are required is left solely to the discretion of the trial court.
Accordingly, the judgment should be reversed and the matter remanded for proceedings not inconsistent with this opinion.
Judges Btjbke, Bebgan and Jasen concur with Judge Beeitel; Chief Judge Fuld and Judges Scileppi and Keating dissent and vote to affirm.
Judgment reversed and matter remitted to Supreme Court, Queens County, for further proceedings in accordance with the opinion herein.

 On April 29, 1965, while the indictment was still outstanding, the District Attorney gave notice of his intention to introduce confessions or admissions of the defendant. On May 14, 1965 defendant moved for a preliminary hearing on admissibility. However, before this motion was decided, the case had been converted into a youthful offender proceeding.